**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JEFFREY E. BROWN,**

            **Plaintiff,**                         **Case No. 2:08 CV 247**
                                              **JUDGE GREGORY L. FROST**
**vs.**                                        **Magistrate Judge Terence P. Kemp**

**COLUMBUS BOARD OF EDUCATION,**
**et al.,**
            **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' Motion for Summary Judgment (Docs. # 54, 55[1]), Plaintiff's Memorandum Contra to Defendants' Motion for Summary Judgment (Doc. # 57), and Defendants' Reply Brief in Support of their Motion for Summary Judgment (Doc. # 12). Also before the Court is the Motion for Oral Argument on Defendant's Motion for Summary Judgment ("Plaintiff's Motion for Oral Argument"). (Doc. # 65.) For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Oral Argument.

**I. Background**

Plaintiff Jeffrey E. Brown was employed by the Columbus Board of Education and was supervised by Defendant Paul W. Brown, the appointed supervisor for the Media Technologies Department of Columbus Public Schools. On September 24, 2005, Plaintiff was on vacation in

---

[1]Defendants filed the same motion twice, one of the motions had exhibits attached and one did not.

Washington D.C. and was arrested for public disturbance and accosting a police officer and charged with disorderly conduct and simple assault after an altercation with Metro Police while boarding a Metro Train.

The arrest caused Plaintiff to be two days late in returning to work, Plaintiff left a message on Supervisor Brown's voicemail indicating that he would be out sick for those two days. After Plaintiff's arrest but before his conviction, Plaintiff was given a Notice of Hearing letter dated November 14, 2005 through the school mail. As a result of the hearing, Plaintiff was informed that he had used his sick time inappropriately and was forced to re-file his absence form using personal time. At this point Plaintiff thought that the disciplinary process regarding his arrest in Washington D.C. was over.

On November 18, 2005, Plaintiff appeared *pro se* in court in Washington D.C. and was convicted of "simple assault" on a police officer. Plaintiff was fined $350.00 and sentenced to eight days in jail.

In early February 2006, Plaintiff was served with another Notice of Hearing letter for alleged insubordination and for his thirteen absences in a twelve month period. Plaintiff attended the hearing with three union representatives, the President and Vice President of his local union and the President of the Central Ohio union, on February 23, 2006.

Either immediately before or during the hearing, Director Howard addressed Plaintiff's assault conviction with Plaintiff and his union representatives. During the conversation, Plaintiff admitted that he had been convicted of simple assault in Washington D.C. Plaintiff testified that Director Howard indicated to him that because of the conviction, Plaintiff would be terminated but that Director Howard would give Plaintiff the opportunity to resign in lieu of termination.

Plaintiff discussed this option with his union representative and indicated to Director Howard that he would resign. Director Howard informed Plaintiff that he should take "two or three days" to think about it and then submit his resignation that would become effective in two weeks. (Doc. # 58-2 at 83.)[2]

The following day, February 24, 2006, Plaintiff went to work and was sent home by Supervisor Brown and another employee. Brown informed Plaintiff that there had been a misunderstanding and that Plaintiff was assigned to home with pay pending a termination hearing. After returning to his home, Plaintiff spoke with the President of his local union. Plaintiff then prepared his resignation letter. Shortly thereafter, Plaintiff met with the President of his local union who accompanied him to tender his resignation letter to Columbus City School District ("CCS"). According to the resignation letter, the resignation would become effective on March 10, 2006.

On March 7, 2006, the Board of Education met and accepted Plaintiff's resignation. On March 9, 2006, Plaintiff submitted a letter requesting to withdraw his resignation. CCS denied Plaintiff's request to withdraw his resignation. Plaintiff filed a grievance in March 2006 and a hearing was held on that grievance. Plaintiff then filed complaints with the appropriate administrative agencies. Neither Plaintiff nor his union filed an arbitration request. Plaintiff asserts, and Defendants do not dispute, that he has exhausted his administrative appeals.

On February 8, 2008, Plaintiff filed a six count complaint against Columbus Public Schools Board of Education, Columbus Public Schools, Supervisor Brown, and Director

---

[2]Plaintiff's deposition.

Howard in the Common Pleas Court of Franklin County Ohio. Defendants removed the action to this Court.

On June 18, 2008, Plaintiff filed an amended complaint. (Doc. # 20.) On June 24, 2008, Plaintiff requested leave to again amend the complaint. (Doc. # 23.) That motion was unopposed. This Court granted Plaintiff's motion to amend. (Doc. # 26.) Plaintiff filed a second amended complaint on September 8, 2008. (Doc. # 29.)

Also on September 8, 2008, counsel made an appearance on Plaintiff's behalf. (Doc. # 28.) Before that time, Plaintiff had been proceeding without the assistance of counsel.

## II. Plaintiff's Motion for Oral Argument

Plaintiff filed a motion requesting the opportunity for an oral hearing on Defendants' Motion for Summary Judgment. (Doc.# 10.) This Court's Local Rules do not provide for oral argument requests to be made by motion:

> [I]f oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument. This may be done by including the phrase "ORAL ARGUMENT REQUESTED" (or its equivalent) on the caption of the motion or on a memorandum. The ground(s) for any such request shall be succinctly explained. If the Court determines argument or a conference would be helpful, the Court will notify all parties.

S.D. Ohio Civ. R. 7.1(b)(2).

Although incorrect in the manner in which it was presented, the Court will accept the motion as effectuating a request for oral argument. With regard to that request, the Court finds that oral argument is not deemed to be essential to the fair resolution of this case. Accordingly, the Court **DENIES** Plaintiff's request for oral argument.

## III. Defendants' Motion for Summary Judgment

Defendants have filed a motion requesting summary judgment on all Plaintiff's claims for relief.

## A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56(c). In making this determination, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations." *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover*, 284 F. Supp.2d at 862 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c). The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

**B. Summary Judgment Analysis**

In Plaintiff's seconded amended complaint he alleges the following claims for relief: (1) due process violations; (2) fraud; (3) double jeopardy; (4) breach of contract; (5) civil conspiracy; (6) intentional infliction of emotional distress; (7) negligent retention and supervision; (8) dismissal contrary to public policy; and (9) promissory estoppel. Defendants ask for judgment as a matter of law on all of these claims.

First, Defendants argue that a number of the claims for relief should be stricken from the seconded amended complaint because Plaintiff was not granted permission to add these claims. *See* Fed. R. Civ. P. 12(f) (providing vehicle to strike from pleadings). That is, on June 24, 2008, Plaintiff requested leave to amend the complaint a second time for the specific purpose of adding

the union and three of its representatives as defendants in two of the claims for relief already alleged. (Doc. # 23.) This Court granted Plaintiff's motion to amend. (Doc. # 26.) However, when Plaintiff filed the second amended complaint on September 8, 2008, he added seven new claims for relief against various already existing Defendants and failed to add the union or any union representatives as defendants. (Doc. # 29.) Consequently, Defendants argue that these claims for relief should be stricken.

While the Court agrees that Plaintiff failed to properly add these claims for relief, the Court need not decide whether to strike these claims because the claims do not survive Defendants' Motion for Summary Judgment.

Second, Defendants argue that they are entitled to summary judgment on Plaintiff's claims for relief referred to above as (3) through (9) because in his memorandum in opposition to Defendant's Motion for Summary Judgment, Plaintiff does not respond to Defendants' request for summary judgment on those claims for relief, thereby not meeting his burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Defendants are correct. However, even if Plaintiff had addressed these claims for relief in his opposition memorandum, as is shown below, those claims cannot survive Defendants' Motion for Summary Judgment.

### 1. Due Process

42 U.S.C. § 1983 provides a vehicle to bring a claim for a deprivation of a right secured by the federal constitution or federal law by an individual acting under the color of state law. *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003) (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) and *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56, 56 L. Ed. 2d 185, 98

S. Ct. 1729 (1978)).  Plaintiff claims that Supervisor Brown and Director Howard, acting under color of state law, deprived him of his Fourteenth Amendment right to procedural due process. The parties do not dispute that Brown and Howard were acting under color of state law.  The parties do dispute, however, whether Brown and/or Howard deprived Plaintiff of his constitutional right to procedural due process.

Plaintiff argues that Defendants violated his right to constitutional due process as interpreted by the United States Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) by forcing him to resign without providing him with a pretermination hearing. In analyzing a Section 1983 procedural due process claim for relief the United States Court of Appeals for the Sixth Circuit directs:

> In evaluating a claim for a violation of due process rights, this court applies a two-step analysis.  First, we determine whether the claimant has a property interest that entitles him to due process protection.  *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).  Under state law, government and civil service employees may have a property right in their continued employment.  *See Loudermill*, 470 U.S. at 538.  Second, if the claimant has such an interest, this Court must determine "what process is due."  *Id.* at 541.

*Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 460 (6th Cir. 2004).

Defendants concede that Plaintiff possessed a property interest in his continued employment because Ohio law provides for dismissal or suspension only upon certain showings. *See* Ohio Rev. Code § 124.11.[3]  Defendants argue, however, that Plaintiff cannot maintain his

---

[3]Ohio Rev. Code § 124.34 provides:

No officer or employee shall be reduced in pay or position, fined, suspended, or removed, or have the officer's or employee's longevity reduced or eliminated, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination,

claim for a due process violation because he voluntarily resigned from his job. This Court agrees.

A public employee with a property interest in continued employment is deprived of that interest by his employer if the employer constructively discharges him by forcing him to resign involuntarily. *Rhoads v. Bd. of Educ.*, 103 Fed. Appx. 888, 894 (6th Cir. 2004) (citations omitted). "However, if a plaintiff resigns of h[is] own free will, even as a result of the defendant's actions, then []he voluntarily relinquishes h[is] property interest in continued employment, and the defendant cannot be found to have deprived h[im] of that interest without due process of law. *Id.* (citation omitted). The Sixth Circuit recently explained the law regarding the voluntariness of resignations in a case analogous to the instant action, wherein an employee tested positive for marijuana in a drug test and at 10:00 a.m. was told that she would be terminated. The employee asked, and was permitted, to resign in lieu of termination if she chose resignation before 5:00 p.m. that same day. The circuit court explained:

> In general, employee resignations are presumed to be voluntary. An employee may rebut this presumption by producing evidence indicating that the resignation was involuntarily procured. Whether an employee's resignation was involuntary depends upon whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position. Relevant to this inquiry are "(1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice [she] was given, (3) whether the employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation."

---

discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony.

> The mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe there were grounds for termination. On the other hand, an employee resigns involuntarily if, after being given a choice between resignation and termination, she is not granted sufficient time and opportunity to deliberate about the choice.

*Rhoads*, 103 Fed. Appx. at 895 (internal citations omitted). *See also Harris v. Butler County, Ohio*, No. 1:07CV069, 2008 U.S. Dist. LEXIS 86385, at *19 (S.D. Ohio Sept. 3, 2008) (relying upon same voluntary resignation tests). In *Rhoads*, the court affirmed the district court's grant of summary judgment to the state employer, finding that the plaintiff's resignation was voluntary based upon the resignation meeting three of the four elements laid out above. *See id.* (the court was "unclear whether Rhoads had discretion to select the effective date of her resignation. It could certainly be concluded that she did not, considering that she was given until 5:00 p.m. on April 15 to resign and that the resignation submitted that day states that it was effective immediately."). The *Rhoads* court held that "[i]n light of the presumption that resignations are voluntary, a jury could not conclude on the basis of the evidence presented that a reasonable person would, if in Rhoads's position, feel compelled to resign."

In the instant action, the facts are even more compelling for a finding that the resignation was voluntary than in *Rhoads* in that all four of the relevant inquiry elements of the voluntariness test are met here. Although Director Howard presented Plaintiff only with a choice between resignation and termination, Plaintiff's admitted assault conviction gave Howard good cause to believe that Plaintiff was subject to termination. That is, although Plaintiff was not ultimately terminated pursuant to Ohio Rev. Code § 3319.39, Howard reasonably believed that that statute

was applicable to Plaintiff and that it would have required Plaintiff's termination based upon Plaintiff assault conviction.  *See* Ohio Rev. Code § 3319.39(B).[4]

Further, Plaintiff's understanding of the nature of the choice he was required to make is demonstrated by the fact that he discussed the choices with his union representatives–the President and Vice President of his local union and the President of the Central Ohio union–and discussed the choice with a teacher at Ft. Hayes High School.  *See Harris*, 2008 U.S. Dist. LEXIS 86385, at *20 (finding that the plaintiff "fully understood the options as he testified that he discussed them with his wife and union steward").  Also, Plaintiff was given a reasonable amount of time to choose between termination and resignation as he was given approximately twenty-four hours in which to decide.  *See Rhoads*, 103 Fed. Appx. at 895 (holding that seven hours was "a reasonable amount of time to deliberate meaningfully about the choice"); *Harris*, 2008 U.S. Dist. LEXIS 86385, at *20 (holding that the next morning reasonable).  Moreover, it is not disputed that Plaintiff did not request to withdraw his resignation at any time before the Board accepted it, *i.e.*, at any time between February 24, 2006 to March 7, 2006.  Finally, Plaintiff was permitted and did select the effective date of his resignation.  When the resignation

---

[4]Section 3319.39(B)(1) of the Ohio Revised Code provides:

Except as provided in rules adopted by the department of education in accordance with division (E) of this section and as provided in division (B)(3) of this section, no board of education of a school district and no governing authority of a chartered nonpublic school shall employ a person as a person responsible for the care, custody, or control of a child if the person previously has been convicted of or pleaded guilty to any of the following:

(a) A violation of section  . . .  2903.13 [assault] . . . of the Revised Code.

was accepted three days before the selected date, Plaintiff was given the opportunity to file a grievance related to the resignation and its effectiveness.

The Court finds that Plaintiff's argument to support his position that his resignation was not voluntary is unpersuasive and does nothing to detract from this conclusion. Plaintiff relies upon *Kinney v. Dep't of Admin. Serv.*, 14 Ohio App. 3d 33 (Ohio Ct. App. 1984), which held:

> Where an appointing authority induces a resignation as the only alternative to a removal based upon unfounded charges of misconduct, the resignation is ineffective to deny the employee [the ability to appeal his removal].

Doc. # 57 at 16 (citing *Kinney*, *supra*, at syllabus). *Kinney* is unhelpful here because of the numerous factual distinctions between it and the instant action. First, the plaintiff in *Kinney* was not permitted to administratively appeal his termination based upon the employer's contention that the plaintiff voluntarily resigned. Here, Plaintiff was permitted to appeal his termination and the effectiveness of his resignation. Also, the facts surrounding the resignation in the instant action are not analogous to those in *Kinney*. Specifically, the plaintiff in *Kinney* was kept at work for hours under surveillance, not permitted to speak to anyone but his wife during one phone call, and required during that time to decide to resign or be terminated. Moreover, there were issues of whether the employee was innocent of the charges brought against him and he was not permitted to offer any evidence on his own behalf, evidence which the appellate court believed was "relevant to the issue of voluntariness." The *Kinney* court concluded that "the totality of the circumstances, including hours of unwarranted constraint and pressure, created by the [employer] department" rendered the resignation involuntary.

Contrarily, in this case, there was no issue as to Plaintiff's innocence of the charge brought against him–Plaintiff admitted that he had been convicted of assault. Further, Plaintiff

talked about his resignation with high ranking union representatives several times and was even accompanied by one of them when he submitted his resignation, was permitted time alone at his home to discuss the decision with whomever he chose, had twenty-four hours to decide whether to resign, and could have withdrawn the resignation at any time before the Board of Education accepted it. Based on the totality of the circumstances before it, this Court concludes that, in light of the presumption that resignations are voluntary, a jury could not conclude on the basis of the evidence presented that a reasonable person would, if in Plaintiff's position, feel compelled by his employer to resign.

Accordingly, even when viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact as to the voluntariness of his resignation. Because Plaintiff voluntarily resigned he was not entitled to a pretermination hearing. Thus, Plaintiff cannot maintain a cause of action based on Defendants' alleged failure to provide him with procedural due process. Consequently, Defendants are entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim.

### 2. Fraud

The Ohio Supreme Court has defined the elements of fraud as:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987) (citations omitted).

Plaintiff argues that Supervisor Brown made false and fraudulent misrepresentations as to the applicability of Ohio Rev. Code § 3319.39(B)[5] when he stated to Plaintiff that his assault conviction was "an automatic disqualifier" because that is not an accurate statement of the law. (Doc. # 58-2 at 83.)  Plaintiff further contends that he understandably relied upon that false representation to his detriment, resulting in damages.  Plaintiff's arguments are not well taken.

As Defendants correctly point out, there is no evidence before the Court showing that Director Howard knew that the alleged misrepresentation was false or that he made the alleged misrepresentation with disregard and recklessness as to knowledge of its falsity.  Indeed, the evidence shows that Howard had discussed the statute's applicability to Plaintiff with the CCS legal department and believed that the statute applied to Plaintiff and would require his termination.  Howard reasonably consulted with the legal department to ensure that the statute was applicable.

Thus, even when viewing the evidence in the light most favorable to Plaintiff, he has failed to set forth a *prima facie* showing of fraud and Defendants, therefore, are entitled to summary judgment on that claim for relief.

### 3.  Double Jeopardy

In the seconded amended complaint, Plaintiff alleges that he had already once been disciplined for the facts surrounding the September 24, 2005 incident in Washington D.C., pursuant to the Notice of Hearing Letter, dated November 14, 2005.  That matter was resolved

---

[5]The parties disagree as to whether this statute would require Plaintiff's termination. Because resolution of that issue is not necessary for this Court to render its opinion on any of Plaintiff's claims for relief, resolution of the issue would constitute an advisory opinion, forbidden under Article III of the Constitution of the United States.  *See* U.S. Const., art. III, § 2, cl.1; *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002).

via submission of an amended time sheet. Plaintiff avers that "Defendants later used the same factual basis to terminate Plaintiff's employment, thus constituting double jeopardy or twice punishing Plaintiff for one factual occurrence, violative of the Fifth Amendment and of his property rights protected by the Fourteenth Amendment of the United States Constitution." (Doc. # 29 ¶ 100.) Defendants argue that the double jeopardy clause is not applicable to the instant action. This Court agrees.

The double jeopardy clause applies only to proceedings that are essentially criminal and is to prevent successive criminal proceedings for the same offense. *See Hudson v. United States*, 522 U.S. 93, 98-99 (1997). Further, Defendants correctly point out that the double jeopardy clause has been held by the Sixth Circuit not to apply to situations where a governmental entity, acting as an employer, imposes sanctions on an employee that a private employer could have taken. *See United States v. Payne*, 2 F.3d 706, 710-11 (6th Cir. 1993) ("the administrative hearing on this dismissal did not amount to a determination of punishment for double jeopardy purposes").

Finally, even if the double jeopardy clause applied it would not provide Plaintiff with the relief he requests because Defendants did not rely upon "the same factual basis" to punish Plaintiff twice. The first discipline Plaintiff received related to his trip to Washington D.C. was for dishonesty–turning in sick time when he was actually in jail as the result of an arrest for public disturbance and accosting a police officer. The second discipline was termination, which was a result of being convicted, as opposed to lying about being arrested, of the crime of assault. Plaintiff simply was not punished twice for the same factual occurrence.

Accordingly, there is no genuine issue of material fact related to Plaintiff's double jeopardy claim for relief and Defendants are entitled to summary judgment on it.

### 4. Breach of Contract

Plaintiff alleges in the seconded amended complaint that Defendants breached the collective bargaining agreement ("CBA") between CCS and Plaintiff's union when they terminated him. Defendants argue that a union employee's rights created by a CBA are governed by the Labor Management Relations Act, 29 U.S.C. § 185. *Martin v. Lake County Sewer Co., Inc.*, 269 F.3d 673 (6th Cir. 2001), and that under that act Plaintiff has no standing to file an action against his employer without also filing suit against his union for breach of the CBA. Further, Defendants assert that the exception to this rule, a hybrid Section 301 claim, cannot survive their summary judgment motion. Defendants' arguments are well taken.

As Defendants correctly argue, a union employee has standing to bring a breach of contract claim against his employer only in conjunction with a breach of the duty of fair representation claim against his union. *See Aloisi v. Lockheed Martin Energy Sys.*, 321 F. 3d 551, 558 (6th Cir. 2003) (citing *Bacashihua v. United States Postal Serv.*, 859 F.2d 402, 405-06 (6th Cir. 1988)). This type of action is referred to as a hybrid Section 301 claim. *See id.* Although a plaintiff need not sue both his employer and his union, he must prove both the breach of the CBA and the breach of the duty of fair representation. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 164 (1983)). Unless a plaintiff demonstrates both violations, he cannot succeed against either party. *Id.* (citing *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987)). Here, Plaintiff

has not alleged nor is there any evidence before the Court that his union breached its duty of fair representation.

Consequently, the evidence is such that no reasonable jury could return a verdict for Plaintiff on his breach of contract claim. Therefore, Defendants are entitled to summary judgment on that claim for relief.

### 5. Civil Conspiracy

In the second amended complaint, Plaintiff alleges that Supervisor Brown, Director Howard, and another CCS employee engaged in a conspiracy to terminate him. Defendants argue that Plaintiff has not and cannot present any evidence of the conspiracy he alleges. This Court agrees.

The tort of civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995). An underlying unlawful act is required before a party can prevail on a civil conspiracy claim. *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998). In this action, Plaintiff sets forth no evidence of an underlying unlawful act and no evidence that the alleged participants acted together.

Thus, there is no genuine issue of material fact and Defendants are entitled to summary judgment on Plaintiff's civil conspiracy claim.

### 6. Intentional Infliction of Emotional Distress

In the second amended complaint, Plaintiff alleges a claim for relief for intentional infliction of emotional distress. To recover on an action for intentional infliction of emotional distress four elements must be proved:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it[.]"

*Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (Ohio App. 1983) (internal citations omitted). Plaintiff offers no evidence of emotional distress. Nor does this Court find any Defendant's conduct such that it comes near to the extreme conduct necessary to support a claim of intentional infliction of emotional distress.

Consequently, no reasonable jury could return a verdict for Plaintiff on intentional infliction of emotional distress claim and Defendants are, therefore, entitled to summary judgment on that claim.

### 7. Negligent Retention and Supervision

Plaintiff alleges in his second amended complaint that Defendants Columbus Public Schools Board of Education and Columbus Public Schools are liable for negligent retention and supervision of Supervisor Brown and Director Howard. Defendants argue that Chapter 2744 of the Ohio Revised Code governs the tort liability of political subdivisions, that the school district is a political subdivision for the purposes of this Chapter 2744, and that a political subdivision

cannot be found liable for damages caused by an act or omission of the subdivision or one of its employees.  *See Doe v. Jefferson Area Local Sch. Dist.*, 97 Ohio App. 3d 11, 13 (Ohio App. 1994).

Plaintiff has made no argument to the contrary nor has he cited to any exception that might apply to Defendants' immunity under the statute.  *See* Ohio Rev. Code § 2744.02(B). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claims for negligent retention and supervision of employees.

### 8. **Dismissal Contrary to Public Policy**

In the second amended complaint Plaintiff avers that his dismissal violates the public policies of Ohio.  Wrongful termination in violation of public policy is an exception to the employment at will doctrine.  *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (1995).  To succeed on such a claim, a plaintiff must demonstrate (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) that the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).  *Id.* (citing *Greeley v. Miami Valley Maintenance Contrs.*, Inc., 49 Ohio St.3d 228 (1990) and *Painter v. Graley*, 70 Ohio St.3d 377 (1994)).

Defendants correctly argue that Plaintiff's claim fails for two reasons.  First, discharge in violation of public policy is available only to at-will employees, which Plaintiff is not.  *Haynes*

*v. Zoological Soc'y*, 73 Ohio St. 3d 254, 258 (Ohio 1995). Second, Plaintiff resigned, which also of necessity defeats a wrongful discharge claim. Thus, even when viewing the evidence in the light most favorable to Plaintiff the evidence is such that no reasonable jury could find for Plaintiff on his claim for wrongful discharge in violation of public policy and Defendants are entitled to summary judgment on that claim.

### 9. Promissory Estoppel

Plaintiff alleges a claim in the seconded amended complaint for promissory estoppel. The elements of promissory estoppel are: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App. 3d 281, 284-285 (1992).

Here, Defendant argues that Plaintiff has alleged no promise separate from those in the CBA and no reliance has been identified by Plaintiff. Plaintiff makes no response to these arguments. Accordingly, there is no genuine issue of material fact as to Plaintiff's claim for promissory estoppel and Defendants are entitled to summary judgment on it.

### IV. Conclusion

Based on the forgoing, the Court **GRANTS** Defendants' Motion for Summary Judgment (Docs. # 54, 55) and **DENIES** Plaintiff's Motion for Oral Argument (Doc. # 65). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**　　　　　
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**